UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| In re: )<br>)<br>DAVID L. DANIELS, et al., )<br>)<br>Debtors, )<br>)<br>_____ )<br>)<br>HTLF BANK, )<br>)<br>Appellant, )<br>)<br>v. )<br>)<br>DAVID L. DANIELS, et al., )<br>)<br>Defendants. ) | No. 2:24-CV-2 HEA |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on appeal from a bankruptcy court order denying a creditor's motion to lift an automatic stay in order to initiate foreclosure proceedings on real property. The issues are fully briefed, and the appeal is ripe for review. For the reasons that follow, the appeal is denied.

### *I. Background*

The relevant facts in this matter are not in dispute. David L. Daniels and Sandy E. Daniels (collectively the "Debtors") operate a cattle feed lot in Schuyler County, Missouri. The cattle operation, which is managed by their son, Logan Daniels, is located on two continuous tracts of land. One tract of land is 115 acres

and was formerly owned by Phyllis Daniels, debtor David Daniels's mother (the "Property"). The other tract is an additional 464 acres, which is owned by Debtors (the "464 acres"). In 2002, Phyllis Daniels conveyed her interest in the Property to her son, debtor David Daniels, and her grandson, non-debtor Logan Daniels, as joint tenants through a Beneficiary Deed (the "2002 Beneficiary Deed"). The 2002 Beneficiary Deed stated that it was executed pursuant to Mo. Rev. Stat. § 461.025 and would not come into effect until Phyllis Daniels's death.

Debtors financed their cattle operation with a series of loans from Dubuque Bank & Trust Company ("DB&T" or "Creditor") that totaled over $1.6 million (the "Loan").[1] The Loan is secured by farm equipment, vehicles, and farmland – more specially, the Property and the 464 Acres. In 2017, Phyllis Daniels granted to DB&T a deed of trust ("2017 Deed of Trust") on the Property as collateral on the Loan. The 2017 Deed of Trust contains terms describing events that constitute, at DB&T's option, an "Event of Default." (ECF No. 10, Ex. 1 at 87-88). The death of Phyllis Daniels as the grantor under the 2017 Deed of Trust is listed as an event of default as is the commencement of bankruptcy proceedings. (*Id.* at 88).

On October 9, 2019, the Debtors filed a Voluntary Petition under Chapter 12 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern

---

[1] DB&T has since merged with HTLF Bank and filed a motion to substitute party, which the Court granted.

District of Missouri. DB&T, who later merged with HTFL Bank, is a secured creditor of the Debtor's estate with a claim of $1,659,019.53. On May 22, 2020, the bankruptcy court entered an Order Confirming Debtors' Second Amended Plan of Adjustment of Debts of a Family Farmer with Regular Income ("Second Amended Plan" or the "Plan"). The Second Amended Plan, which was approved by the Bankruptcy Court, provides in part as follows:

> Debtors will amend the terms of the loan to amortize payment of DB&T's claim on a 20 year amortization schedule with 6 per cent fixed rate of interest. Payments will be made quarterly, with the first payment to be made on June 1, 2020 and each subsequent payment made 3 months later. The quarterly payment amount will be $34,494.42 per quarter. These quarterly payments are calculated using the claim figure amortized over 20 years at 6% interest. The unpaid balance of DB&T's claim will be fully due and be scheduled for possible renewal 10 years from the date the first payment is due under this plan (June 1, 2030), but will not automatically renew. Any provisions in the notes regarding maturity or renewal are modified by the terms of these plan provisions and are extended accordingly. All terms of the notes not modified herein will remain in full force and effect.
>
> DB&T's claim will not be discharged by confirmation or the completion of the Plan payments, and will be extinguished only through full satisfaction. *DB&T will retain its lien on all of its collateral and proceeds, including land, vehicles, farm equipment and supplies, feed, and crops until the secured indebtedness is paid in full, and all terms of DB&T's mortgage(s) and security agreement(s) will remain in full force and effect. DB&T holds a valid mortgage and lien against property owned by non-debtor Phyllis Daniels, and will be stayed from pursuing any collateral owned by Phyllis Daniels so long as Debtors comply with their obligations under this plan.* The Debtors shall maintain insurance naming DBT&T as a loss payee to the extent or greater the recited value against all peril loss and theft with the current policy or evidence of such insurance in the hands of DB&T at all times

3

> while Debtors are indebted to DB&T  The Debtors shall maintain the collateral in a condition satisfactory to DB&T and shall permit inspection of the collateral within 5 days of such request.
>
> Upon default of any payment by Debtors to DB&T, DB&T shall file a notice of default with the [Bankruptcy] Court and serve a notice on the Trustee, the Debtors and counsel for Debtors.

(ECF No. 10, Ex. 1 at 115-16) (emphasis added).

On November 8, 2022, Phyllis Daniels died. Shortly following Phyllis Daniels's death, DB&T gave Debtors notice that they considered Phyllis Daniels's death an uncurable default under the terms of the 2017 Deed of Trust. In a letter dated February 27, 2023, counsel for DB&T informed the Debtors that the bank was calling in the Loan and intended to pursue foreclosure to collect, unless the Debtors paid off the Loan in the amount of $1,574,064.64. Debtors contested that they were in default, arguing that they were current on all payments under the terms of the Second Amended Plan.

On May 22, 2023, DB&T filed a motion with the bankruptcy court to lift the automatic bankruptcy stay in order to foreclose on the Property. DB&T argued that the uncurable default that resulted on Phyllis Daniels's death amounted to "cause" under 11 U.S.C. § 362(d)(1) to lift the stay so that DB&T could assert its rights and foreclose on the Property. DB&T requested that the bankruptcy court "enter an order lifting the stay to permit DB&T to take action on [the 2017 Deed of Trust] and pursue whatever probate-related processes that may also impact the Debtors as beneficiaries

4

of Phyllis [Daniels]'s estate, and whatever further relief the [Bankruptcy] Court deems equitable given the circumstances." (ECF No. 10, Ex. 1 at 22-23). Debtors opposed DB&T's motion.

On October 24, 2023, following a hearing on the matter, the bankruptcy court denied DB&T's motion to lift the stay. In this appeal, DB&T contends that the bankruptcy court erred in concluding that the default on the 2017 Deed of Trust for the Property, which was caused by Phyllis Daniels's death, was not cause under § 362(d)(1) to lift the stay.

## *II. Jurisdiction and Legal Standard*

This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1) because the denial of a motion for relief from the automatic bankruptcy stay is a final, appealable order. *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35 (2020). "When a bankruptcy court's judgment is appealed to the district court, the district court acts as an appellate court and reviews the bankruptcy court's legal determinations *de novo* and findings of fact for clear error." *Fix v. First State Bank of Roscoe*, 559 F.3d 803, 808 (8th Cir. 2009) (citation omitted). A bankruptcy court's interpretation of a confirmed plan, however, is reviewed for abuse of discretion. *In re Peabody Energy Corp.*, 958 F.3d 717, 721 (8th Cir. 2020). *See also In re Kelley*, 488 B.R. 97 (B.A.P. 8th Cir.), *aff'd,* 536 F. App'x 675 (8th Cir. 2013) ("[a] bankruptcy court's interpretation of the confirmed plan is entitled to deference as an

5

interpretation of its own order and should be reviewed under the abuse of discretion standard."). Similarly, a decision to grant or deny a motion for relief from the automatic stay is reviewed for an abuse of discretion. *JCB, Inc. v. Union Planters Bank, NA*, 539 F.3d 862, 869 (8th Cir. 2008).

"A bankruptcy court abuses its discretion when it fails to apply the proper legal standard or if it bases its order on findings of fact that are clearly erroneous." *In re Peabody Energy Corp.*, 599 B.R. 610, 613 (E.D. Mo. 2019), *aff'd,* 958 F.3d 717 (8th Cir. 2020). There is an abuse of discretion "when a relevant factor that should have been given significant weight is not considered, when an irrelevant or improper factor is considered and given significant weight, or when all proper and no improper factors are considered, but the court in weighing those factors commits a clear error of judgment." *In re Nat'l Warranty Ins. Risk Retention Grp.*, 384 F.3d 959, 962 (8th Cir. 2004) (citation omitted). "A court's decision will not be disturbed as long as it is within the range of discretion afforded to a given determination and is not influenced by a mistake of law." *Id.* (quotation and citation omitted).

### III. Discussion

In this appeal, DB&T argues that the bankruptcy court abused its discretion and erred when it found that cause did not exist to lift the automatic stay. Section 362(d)(1) of the Bankruptcy Code provides that a bankruptcy court "shall grant relief from" the automatic stay "for cause, including the lack of adequate protection of an

6

interest in property[.]" 11 U.S.C. § 362(d)(1).[2] "Cause" under § 362(d)(1) "has been defined as 'any reason whereby a creditor is receiving less than [its] bargain from a debtor and is without a remedy because of the bankruptcy proceeding.'" *In re Martens*, 331 B.R. 395, 398 (B.A.P. 8th Cir. 2005) (quoting *In re Food Barn Stores, Inc.*, 159 B.R. 264, 267 (Bankr. W.D. Mo. 1993)). In practice, when evaluating "cause," courts consider whether a creditor's interest in property has lost value or is unduly at risk, usually through the fault of the debtor. Examples of cause are a debtor's failure to make payments under a bankruptcy plan, to pay taxes on property, to provide insurance coverage, or to maintain the property. *In re Martens*, 331 B.R. at 398, *In re Food Barn Stores, Inc.*, 159 B.R. at 267.

### A. The Bankruptcy Court's Decision

In its decision denying DB&T's motion to lift the stay, the bankruptcy court correctly stated that it was DB&T's position that it entered into the 2017 Deed of

---

[2]The statute provides as follows:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
   (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
   (2) with respect to a stay of an act against property under subsection (a) of this section, if-
      (A) the debtor does not have an equity in such property; and
      (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d). DB&T requested relief under § 362(d)(1) only.

7

Trust with Phyllis Daniels "because of her specific and unique attributes" and, therefore, according to the creditor, it "'should not be forced to endure the risk of the land coming under ownership of others who may not have [Mrs. Daniels's] degree of stewardship.'" (ECF No. 10, Ex. 10 at 29) (quoting DB&T's Motion to Lift Stay to Foreclose Collateral).  However, in evaluating the evidence, the bankruptcy court found that since Phyllis Daniels's death, Logan and David Daniels have used the Property "in the same way as Mrs. Daniels," and more specifically, that it remains part of the Debtors' cattle operation, as it had been prior to the Debtors' bankruptcy petition.  This finding, which DB&T does not dispute, is supported by the evidence presented at the hearing that was held on July 24, 2023.  The bankruptcy court also found there was evidence that Logan and David Daniels made improvements on the Property, and that the Property is important to the continuation of Debtors' cattle operation, as it accounts for 20% of its revenue.  Again, DB&T does not dispute these findings.

As for the bankruptcy court's legal conclusions, it found that the Property was conveyed to debtor David Daniels and Logan Daniels upon Phyllis Daniels's death through the 2002 Beneficiary Deed, and that under Missouri law, their interest was subject to the 2017 Deed of Trust.  In other words, DB&T retains its interest in the Property as collateral for the Loan.  DB&T does not contest this finding.  The bankruptcy court also ruled that the terms of default were not modified by the Second

8

Amended Plan, and that Phyllis Daniels's death constituted default under the 2017 Deed of Trust. Again, points DB&T does not dispute.

The bankruptcy court then proceeded to interpret the terms of the Second Amended Plan and wrote the following: "the Second Amended Plan recognizes the interest [DB&T] has in the Property and states that if Debtors comply with their obligations under the Second Amended Plan (i.e., make payments under the Second Amended Plan) then any actions by [DB&T] to pursue any collateral, including the property, will be stayed." (ECF No. 10, Ex. 1 at 32). The bankruptcy court found that Debtors were current in their payments – a finding of fact that DB&T does not dispute – and, therefore, Debtors were in compliance with the Second Amended Plan. The bankruptcy court ultimately concluded that the standard for lifting the automatic stay under 11 U.S.C. § 362(d)(1), which the court correctly identified, had not been met and found that under the facts of the case, there was no cause under § 362(d)(1) to grant DB&T relief from the automatic stay.

**B.      Did the Bankruptcy Court Abuse Its Discretion?**

DB&T argues that the bankruptcy court abused its discretion in two main respects. The bankruptcy court found that under the terms of the Second Amended Plan, DB&T was stayed from foreclosing on the Property so long as Debtors were making payments under the Plan. DB&T argues that the bankruptcy court's interpretation of the Plan is contrary to the plain language of its terms. DB&T points

9

to language in the Plan that states: "DB&T holds a valid mortgage and lien against property owned by non-debtor Phyllis Daniels, and *will be stayed from pursuing any collateral owned by Phyllis Daniels* so long as Debtors comply with their obligations under this plan." (ECF No. 10, Ex. 1 at 116). DB&T contends that this non-debtor stay, which applied to collateral owned by Phyllis Daniels, was no longer operative because Phyllis Daniels no longer owned the Property. According to DB&T, the Plan does not prevent DB&T from pursuing foreclosure on the Property.

A bankruptcy court's confirmation of reorganization plan replaces prior obligations, and liens not preserved by the plan "may be extinguished." *JCB, Inc.*, 539 F.3d at 870. But a plan can "expressly preserve preexisting liens," *In re Dial Bus. Forms, Inc.*, 341 F.3d 738, 743 (8th Cir. 2003), and "a security interest preserved by the plan will continue after confirmation." *JCB, Inc. v. Union Planters Bank, NA*, 539 F.3d 862, 870 (8th Cir. 2008) (citing 11 U.S.C. § 1141(c)). This Court agrees with the bankruptcy court that the Second Amended Plan does not extinguish DB&T's interest in the 2017 Deed of Trust, and that Phyllis Daniels's death did constitute a default. But the Court finds that the bankruptcy court erred to the extent that it concluded the Plan itself precludes DB&T from initiating foreclosure proceedings on the Property, as the language of the Plan plainly states that DB&T is precluded from pursuing collateral *owned by Phyllis Daniels*. Upon her death, there was no collateral owned by Phyllis Daniels.

That said, the fact the Second Amended Plan no longer prohibited DB&T from pursuing foreclosure proceedings against the Property does not mean that DB&T was entitled to do so, as the automatic bankruptcy stay remained in place. The Property was conveyed to debtor David Daniels and his son and was being used in the Debtors' cattle operation, as it had been prior to bankruptcy petition.[3] The Court, therefore, now turns to whether the bankruptcy court abused its discretion when it determined there was no cause to lift the automatic stay under § 362(d)(1).

DB&T cites to *In re Martens* and argues that because it is being denied its legal right to foreclosure on the Property, it is "receiving less than [its] bargain from a debtor and is without a remedy because of the bankruptcy proceeding" and, therefore, there is cause to lift the stay. *In re Martens*, 331 B.R. at 398. The facts in *In re Martens,* however, are not at all comparable to the facts of this case. There, the debtor had made no mortgage payments for over five months. *Id.* at 398. Here, Debtors have been making their payments, and there is no evidence that the collateral is losing value. DB&T is relying only on the fact that Phyllis Daniels's death resulted in a technical default and legally, without the stay in place, it would be

---

[3] In moving for relief in the bankruptcy court, DB&T did not argue that its interest in the Property was not subject to the bankruptcy stay, but rather it asked the bankruptcy court to lift the automatic stay, so that it could pursue foreclosure. In this appeal, DB&T also does not argue that the bankruptcy stay does not apply to the Property, rather DB&T aruges that bankruptcy court erred when it determined that there was no cause to lift the stay so that it could pursue foreclosure.

11

entitled to foreclosure. There is no evidence that Debtors have failed in their obligations.

DB&T has cited no authority for the argument that its right to foreclosure alone amounts to "cause" to lift a stay under 11 U.S.C. § 362(d)(1), and the Court has found none. In fact, the Supreme Court has acknowledged that a creditor's legal right to immediate foreclosure is not an interest protected by § 362(d)(1), and a right to foreclose may be impeded by a bankruptcy stay. *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371, (1988) (finding creditor was not entitled to interest on its collateral as compensation for delay caused by automatic stay in foreclosing on collateral because "'interest in property' protected by § 362(d)(1) *does not include a secured party's right to immediate foreclosure.*") (emphasis added). *See also, In re Marion St. P'ship*, 108 B.R. 218, 224 (Bankr. D. Minn. 1989) (noting § 361 of Bankruptcy Code protects the value of the collateral, not contractual or legal rights such as being permitted to foreclose on default).

As the bankruptcy court acknowledged in its Order, the automatic stay serves to protect debtors and creditors. In other words, "[i]t preserve[s] the debtor's insolvent estate such that a systematic equitable liquidation procedure for all creditors may be effected." *In re Steffens Farm Supply, Inc.*, 35 B.R. 73, 75 (Bankr. N.D. Iowa 1983) (citing H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 343 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 6300)). Therefore, when

12

considering whether to grant relief from a bankruptcy stay, courts are to consider the circumstances of the case and the relative interests of the debtors and creditors. *Id. See also Foust v. Munson S.S. Lines*, 299 U.S. 77, 83 (1936) (in determining whether to lift the stay, "the court is to exercise the power according to the particular circumstances of the case and is to be guided by considerations ... that make for the ascertainment of what is just to the claimants, the debtor and the estate."). In general, a court should conduct a fact-specific analysis of the circumstances surrounding the default and weigh the equities before deciding whether to lift the stay. *In re Nichols*, 440 F.3d 850, 856 (6th Cir. 2006). As stated above, common examples that support the lifting of a stay are a debtor's failure to make payment, failure to pay taxes on the property or provide insurance, and failure to maintain the property. *In re Food Barn Stores, Inc.*, 159 B.R. at 267. "In each of these examples cause exists because of a failure of performance on the part of the [debtor] that harms the creditor's interests." *Id.*

Here, the bankruptcy court considered that upon Phyllis Daniels's death that the interest in the Property was conveyed to debtor David Daniels and his son, who managed the Debtors cattle operation, and that the Property was still subject to the 2017 Deed of Trust. The bankruptcy court further considered that there was no evidence that the value of Property had decreased and, in fact, Debtors had made improvements on the Property. There was evidence that the Property was being

13

used in the same manner it had before Phyllis Daniels's death, and it accounted for 20% of the revenue of the cattle operation. Finally, and perhaps most importantly, the bankruptcy court considered that the Debtors were current on their payments under the Second Amended Plan. DB&T had received all the payments it was owed under its terms. Based on these facts, the bankruptcy court found there was no cause to lift the stay, and this Court concurs.

In sum, the Court finds that the bankruptcy court did not abuse its discretion when it found there was no cause under § 362(d)(1) to lift the stay in this case. *Compare In re Smith*, 245 B.R. 622, 625 (Bankr. W.D. Mo. 2000) (denying creditor's motion for both retrospective and prospective relief from the automatic stay but noting that stay could be lifted to allow foreclosure "in the event [the debtor] defaults in either his post-petition payments to the mortgagees or his Chapter 13 plan payments to the Chapter 13 trustee); and *In re Food Barn Stores, Inc.*, 159 B.R. at 267 (denying relief from stay where "there is no indication but that debtor is paying its monthly rent, paying common area charges, paying taxes, etc." and the movants' "only contention was that the automatic stay (perhaps) kept them from seeking to break a lease under which they were currently receiving every monetary provision they had bargained for") *with In re Borm,* 508 B.R. 104 (B.A.P. 8th Cir. 2014) ("cause" existed to lift stay were debtors failed to make 15 of the 22 payments due following confirmation of Chapter 13 plan); *In re Wieseler*, 934 F.2d 965, 966 (8th

14

Cir. 1991) (finding bankruptcy stay should have been lifted under § 362(d)(1) where debtors failed to make payments under the plan), *In re Wallace*, No. BR 24-00315, 2024 WL 3648551, at *3 (Bankr. N.D. Iowa Aug. 2, 2024) (lifting stay to allow foreclosure where debtors failed to make any payments towards their loans for the last five months and have been unwilling to offer adequate protection); and *In re Vegt*, 495 B.R. 433, 439 (Bankr. N.D. Iowa 2013) (creditor entitled to lift of the stay where debtors had allowed land to go fallow).

### IV. Conclusion

The Court finds that under the plain language of the Second Amended Plan, DB&T was no longer precluded from pursuing foreclosure on the Property. However, the bankruptcy court did not abuse its discretion in finding that there was no "cause" under 11 U.S.C. § 362(d)(1) to lift the stay to allow for foreclosure on the Property, as the Debtors were making payments under the Plan, the collateral was being used as it was used pre-petition, and there was no evidence that the value of the collateral had decreased. The Court affirms the decision of the bankruptcy court.

Accordingly,

**IT IS HEREBY ORDERED** that the Appeal filed by Dubuque Bank and Trust Company is **DENIED**. [ECF No. 1]

15

**IT IS FURTHER ORDERED** that the Order of the United States Bankruptcy Court for the Eastern District of Missouri dated October 24, 2023 is **AFFIRMED**.

Dated this 19th day of February, 2025.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE

16